In the Matter of RONALD FF., Respondent, v CINDY GG., Appellant.

Third Department, May 29, 1986

APPEARANCES OF COUNSEL

*Edmund J. Hoffman, Jr., P. C.,* for appellant.

*Mahlon R. Perkins, P. C. (Leroy Johnston* of counsel), for respondent.

## OPINION OF THE COURT

YESAWICH, JR., J.

In the spring of 1980, petitioner and respondent, both high school students at the time, began engaging in sexual intercourse without contraception until the fall of that year, when respondent's affection turned to another, Michael Walpole; the latter allegedly fathered respondent's child, Chad, who was born on July 7, 1982. Walpole's paternity, though now conceded by the parties, remained questionable until blood grouping tests excluded the possibility of petitioner's paternity.

Meanwhile, in November 1981, respondent and Walpole announced their plans to marry, but severed their relationship a month later. Petitioner then moved in with respondent at her parents' home in January and February 1982. Shortly thereafter, petitioner relocated to an apartment. Respondent joined him there in May 1982 and, after Chad's birth in July, the three lived together until September 1982 when the parties became estranged and respondent returned, with Chad, to her parents' residence. Again, she and Chad moved in with petitioner from December 1982 to April or May 1983 and for another month in the late summer of 1983. During the intervening periods of estrangement from respondent, petitioner maintained consistent weekly contact with Chad.

Rumors of respondent's intent to migrate to Texas with Chad prompted the instant proceeding and issuance of an order to show cause temporarily restraining respondent from removing Chad from New York and allowing petitioner visitation. Following a hearing, Family Court granted petitioner and his parents the right to visit Chad from 9:00 A.M. to 3:00 P.M. on the second and fourth Sundays of each month; the temporary restraining order was lifted on condition that respondent afford petitioner 30 days' advance notice of any planned move from Tompkins County, where respondent currently resides. Respondent appeals.

Child custody disputes between a parent and nonparent are to be resolved in accordance with the principles announced in *Matter of Bennett v Jeffreys* (40 NY2d 543), which permits intrusion upon parental control provided it is first demonstrated that extraordinary circumstances drastically affecting the welfare of the child exist. If that prerequisite is satisfied,

courts may then proceed to a consideration of the best interest of the child (*supra,* at p 549; *see, Matter of Merritt v Way,* 58 NY2d 850, 853; *Matter of Callahan v Denton,* 114 AD2d 663, 664). Family Court found the threshold criteria met by evidence that respondent's conduct encouraged and condoned the father-son relationship which developed between petitioner and Chad. It is noteworthy in this regard that the parties cohabited during many months of the infant's first two years; that respondent held petitioner out as Chad's father to their friends and relatives; that Chad calls petitioner "daddy"; that petitioner selected the infant's first name and petitioner's surname is listed on Chad's birth certificate; and that petitioner's association with the infant has been constant and devoted. The record amply supports the conclusion that the familial relationship and attachment between Chad and petitioner, his nonbiological father, is an extraordinary circumstance warranting inquiry into the infant's best interest (*see, Matter of Boyles v Boyles,* 95 AD2d 95).

Insofar as the infant's best interest is concerned, the record furnishes no justification for allowing visitation to petitioner's parents, however ardent their dedication to Chad; their status throughout, as nonparties requesting no relief, precludes any determination for or against them (*see, Rush v Curtiss-Wright Export Corp.,* 263 App Div 69, 70, *affd* 289 NY 562; *see also, Matter of Sunshine v Marsh,* 265 App Div 927, *affd* 290 NY 775). However, we take a more amiable view of the decision to grant petitioner visitation rights. As Family Court observed, petitioner has provided the infant with a "significant source of security, identity, and love, in a life otherwise marked by some degree of instability and frequent change". Moreover, the expert testimony (psychologists were called by both parties) lends substance to the court's finding that, at this particular stage in Chad's life, depriving him of petitioner's care and affection "would have a wrenching effect that should be avoided if possible".

As for respondent's challenge to the provision in the order compelling advance notice in the event she desires to leave Tompkins County, we find that this condition reasonably accommodates the rights of the parties now, and makes allowance for timely judicial action to protect the welfare of the infant in the event that respondent wishes to relocate in the future (*see, Weiss v Weiss,* 52 NY2d 170, 174, 176-177). The order does not prohibit respondent from leaving the area, it merely accords petitioner an opportunity to have Family

Court evaluate the situation in terms of the best interest of the infant at that time.

Main, J. P., Casey, and Mikoll, JJ., concur.

Order modified, on the law, without costs, by reversing so much thereof as granted visitation rights to petitioner's parents, and, as so modified, affirmed.