Chief Judge Breitel.
In an article 78 proceeding, petitioners, candidates for promotion on an eligible list, alleged that city-administrative agencies had ignored the applicable list in making appointments or designations to the position of Supervisor III (Welfare) in the New York City Department of Social Services. Petitioners appeal as of right on constitutional grounds from an order affirming the judgment dismissing the petition for failure to state a claim and laches.
There should be a reversal. Petitioners having passed a civil service examination and having been placed on an eligible list for appointment have standing to seek removal of persons allegedly appointed or designated contrary to law.
Petitioners initiated the proceeding approximately two weeks before expiration of the eligible list. Respondents served no answer, but moved to dismiss the petition on objections in point of law (CPLR 7804, subd. [f]). The allegations of fact in the petition are therefore accepted for present purposes as true.
In June of 1968 petitioners, each holding the title of Supervisor II (Welfare) in the New York City Department of Social Services, having passed a civil service promotion examination for Supervisor III, were placed on the eligible list. They were respectively ranked 222, 233 and 271 on the list. The last promotion from the eligible list was made in December of 1970, in favor of an eligible ranking 185. Since then at least 37 appointments or designations to the position of Supervisor III (Welfare), variously described as “ acting ”, “ provisional ”, and “ temporary ”, have been made from outside the list or without regard to the ranking on the list. Some of these- 37 persons continue to serve in the contested positions.
The allegations, if true, support a contention that the appointments or designations were contrary to law (see N. Y. Const., art. V, § 6; Civil Service Law, § 61; N. Y. City Civ. Serv. Comm. Rules & Reg., § 4.7.2). There remains only the question whether petitioners have standing to sue and if laches bars the proceeding.
*43 In Matter of Cash v. Bates (301 N. Y. 258, 261), petitioners, veterans with disabilities of 10% or more, who had passed a civil service examination for the position of motor vehicle license examiner and were entitled to a preference, challenged the appointment of other veterans with no recognized disability (0%) who had also passed the same examination but were not entitled to a preference. The rationale in the Gash case, however, was broader than required by its facts, in that it granted petitioners standing, not because of their personal circumstances but “ because as citizens and taxpayers they are entitled to an opportunity to insist upon the construction which this court placed upon the civil service article of the State Constitution ”. In Matter of Donohue v. Cornelius (17 N Y 2d 390, 397) the rationale in the opinion was also broader than required by its facts and was inconsistent with that expressed in the Gash case; notably it made no reference to Gash or its reasoning.
The petitioner in the Donohue case, at the commencement of that proceeding, was a member of the State Police and had not yet taken a promotion examination for sergeant, the validity of which was an issue in the proceeding. By the time the appeal was heard, petitioner, a highly-publicized dissident, had successfully passed the examination, but had also been dismissed from the State Police for cause. In consequence, the court in the Donohue case concluded that it was, in ultimate effect, confronted with a private citizen’s attempt to annul a civil service examination (at p. 396). Belying on St. Clair v. Yonkers Raceway (13 N Y 2d 72) the court held that the petitioner was not personally aggrieved, he no longer being a member of the State Police and therefore without standing. It expressly stated that a private citizen had no standing, classifying the problem as one involving an attack on State action like any other.
St. Glair, not involving the civil service, had held that a taxpayer was without standing to challenge the validity of a statutory reduction of pari-mutuel tax rates. Its majority opinion cited neither Matter of Cash v. Bates (supra,) nor Matter of Andresen v. Rice (277 N. Y. 271, 281), cases in which standing had been granted persons, as citizens and taxpayers, to challenge alleged violations of the constitutional provisions governing the civil service. Moreover, had petitioner in Donohue remained a member of the State Police and failed the promotion *44 examination, there must have been a different result, because persons who fail an examination would be personally aggrieved by an unlawful examination. A fortiori, persons who pass an examination and are on an eligible list have standing to challenge unlawful appointments or designations to positions for which the list has been established.
Of course, the holding and rationale in the Donohue case do not accord with the rule in the Gash and Andresen cases, neither of which it discussed. Even assuming, however, that the Donohue case was good law, neither its holding nor its rationale would control the status of petitioners in this case as litigants.
Eligibles on a civil service list from which a position is to be filled are directly and substantially affected .by the failure to comply with the law. As parties to a proceeding they bring the kind of interest that leads to full and vigorous presentation and exploration of the issues involved.
That standing should be made to depend upon a person’s place on the list is not persuasive. "When a civil service examination is given, the public, especially those who sit for that examination, are led to believe that appointment will be made according to law. If appointments are made contrary to law then an eligible should be allowed to compel lawful appointments so that he may receive consideration if his number is reached. Denying standing to such a person may well assure that his name will never be reached.
If, however, position on the eligible list were determinative, and it should not be so, then in this case at least one petitioner would have the requisite interest. Petitioner Renaldo was ranked 222 on the list and the last rlumber to be reached was 185. The petition, however, alleged that at least 37 additional appointments were made contrary to law. Selection is made sequentially from the list by grouping the eligibles in ranking groups of three (N. Y. City Civ. Serv. Comm. Rules & Reg., § 4.7.2). Had the appointments been made according to law, petitioner Renaldo would have been considered. The other two petitioners ranked 233 and 271 on the list. There is no way of knowing how many persons on the list would have been unacceptable to the agency or no longer interested in appointment, before those petitioners would have been reached.
*45 Neither the Donohue nor St. Clair cases (supra) indicate that the concept of standing is an inflexible one. There are distinctions of law and fact between Donohue and this case. The most significant is that in this case there are three men who passed a civil service examination and were placed on the eligible list. The responsible agency allegedly ignored that list for at least 37 appointments or designations. These petitioners should have the opportunity to challenge the appointments or designations as being contrary to law.
Unless those who have sat for, and passed a civil service examination may seek judicial review of unlawful appointments or designations to positions for which they have been placed on an “ eligible list ”, then appointments or designations which may be contrary to law will be effectively insulated from public scrutiny, judicial oversight, and perhaps any review whatsoever. Moreover, restriction on standing is largely of judicial creation, often used to avoid difficult issues or unpleasant results; generally standing should be expanded rather than contracted (see Hidley v. Rockefeller, 28 N Y 2d 439, 440, 443 [dissenting opn.]; St. Clair v. Yonkers Raceway, 13 N Y 2d 72, 77, supra [dissenting opn.]).
Petitioners seek removal of persons unlawfully appointed or designated, who, in some cases, continue to serve. As such, the doctrine of laches has no application, since failure to comply with constitutional requirements for making appointments of eligibles to competitive positions is a continuing and constitutional wrong (see Matter of Cash v. Bates, 301 N. Y. 258, 261, supra).
To be sure, it may eventuate that the only relief to which petitioners may be entitled is the removal of those who continue to hold positions contrary to law. The motion to dismiss may not be granted, however, if the petition would warrant any relief.
Accordingly, the order of the Appellate Division should be reversed, the petition reinstated, and the proceeding remitted to Special Term.
Judges Jasen, Gabrielli, Jones, Wachtler and Babin concur; Judge Stevens taking no part.
Order reversed, without costs, and matter remitted to Special Term for further proceedings in accordance with opinion herein.